2021 IL App (2d) 200124-U
Nos. 2-20-0124 & 2-20-0129 cons.
Order filed December 21, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF HEBRON, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
|     Plaintiff and Third-Party Defendant- | ) | |
|     Appellant and Cross-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15 LA 129 |
| | ) | |
| J & L CONTRACTORS, INC., | ) | |
| | ) | |
|     Defendant and Third-Party Plaintiff- | ) | |
|     Appellee and Cross-Appellant | ) | |
| | ) | Honorable |
| (Kennedy Homes Limited Partnership, Third- | ) | Thomas A. Meyer |
| Party Plaintiff and Third-Party Defendant). | ) | Judge, Presiding |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court erred in granting the Village's motion for partial summary judgment finding that a bulk purchaser of residential lots was the successor "Owner" under an annexation agreement. The agreement provided unambiguous conditions for the transfer of the "Owner's" developer obligations to a purchaser, but no evidence was presented to demonstrate that the conditions were satisfied. Therefore, we reverse and remand for further proceedings.

¶ 2    The Village of Hebron (Village) entered into an annexation agreement (Annexation

Agreement or Agreement) with LaSalle Bank N.A., as trustee under a trust agreement dated July

28, 1994, and known as Trust No. 118757-1-0 (the trustee), to develop a residential subdivision. The Agreement identified the trustee as "the Owner" and outlined various responsibilities of "the Owner," including snowplowing the roads in the subdivision and obtaining a letter of credit guaranteeing completion of the streets and other public and private improvements.

¶ 3    The trustee conveyed a portion of the property to Kennedy Homes Limited Partnership (Kennedy Homes), and a "First Amendment to an Annexation Agreement" (Amendment) was executed, in which Kennedy Homes expressly replaced the trustee as "the Owner" and agreed to assume all of its obligations for the property. Kennedy Homes' lots were foreclosed on during the 2008 housing market crash, and a receiver was appointed. After selling several lots to individual purchasers, the receiver sold the remainder of the development to J&L Contractors, Inc. (JLC).

¶ 4    The Village brought suit against JLC for breach of the Annexation Agreement for failure to post a letter of credit and seeking declaratory relief that JLC is obligated to snowplow the roads. The parties filed cross-motions for summary judgment on the issue of whether JLC was the successor Owner, and the Village prevailed. JLC later moved for summary judgment on the grounds of *res judicata*, arguing that the Village's breach of contract claim was barred by a small claims action that the Village dismissed in 2009 against Kennedy Homes, wherein it alleged that Kennedy Homes breached the Annexation Agreement and Amendment by "failing to maintain the agreed upon security for improvements." The circuit court granted JLC's motion and barred the Village's breach of contract claim. The parties cross-appealed. In JLC's appeal (No. 2-20-0129), we reverse and remand. Based on this resolution, the Village's cross-appeal (No. 2-20-0124) is moot, and we therefore dismiss it.

¶ 5                                    I. BACKGROUND

¶ 6    On August 30, 2004, the Village and the trustee, as the then-owner of record of a plot of

vacant farmland (trust property) contiguous to Village borders, entered into the Annexation Agreement to develop what would become a residential subdivision known as the Trails of Hebron. The Agreement identified the trustee as "the 'Owner,' " upon which it imposed various obligations for the development of the trust property. Relevant to this appeal, the agreement requires the Owner to, prior to passage of a final plat for all or any portion of the subdivision, "deposit with the Village a letter of credit guaranteeing the completion of the streets and other public and private improvements." It also makes clear that the Owner is "responsible for maintaining such roads, including but not limited to, street cleaning and snow plowing," until the Village's acceptance of the roads. In the event the Owner fails to snowplow, maintain, or remove debris from the roads, the Agreement provides that the Village may arrange for such services, subject to reimbursement by the Owner.

¶ 7     The trustee sold to Kennedy Homes a portion of the trust property (Kennedy Property). On September 19, 2005, the Village and Kennedy Homes entered into the Amendment, whereby certain changes were made to the Agreement. The Amendment designated Kennedy Homes as "the 'Owner,'" and recognized that the trustee "sold a portion of the [trust property] and Kennedy Homes *** is now the sole and exclusive title holder and owner of record of the Kennedy property." Like the Agreement, the Amendment required Kennedy Homes, as "the Owner," to provide an irrevocable letter of credit to the Village to ensure completion of certain improvements within the subdivision. Specifically, the Amendment stated that "the Owner, its agents, assigns and successors, shall guarantee the performance and fulfillment of any such public or private improvement requirements by submitting an irrevocable letter of credit in favor of the Village. *** Upon completion of all improvements and acceptance by the Village, the letter of credit shall be released." Kennedy Homes thereafter provided letters of credit to the Village beginning in

September 2005, which expired in March 2008. The Amendment did not alter the Owner's obligations to maintain the roads.

¶ 8 The final paragraph in the Amendment states that the Village "hereby consents to the sale of the Kennedy Property from [the trustee] to the [Kennedy Homes]." It continues that "the Owner agrees to assume all obligations of [the trustee] relative to the Kennedy Property and to comply with this First Agreement [*sic*], the Agreement, the Village's Subdivision Ordinance ***, and the Illinois Plat Act (765 ILCS 201/1 *et seq.*)." Both the Annexation Agreement and the Amendment were approved by Village ordinance pursuant to the procedures set forth in section 11-15.1-1 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11-15.1-1 (West 2004)), which authorizes municipalities "to enter into an annexation agreement with one or more of the owners of record of land in unincorporated territory." From September 2007 to February 2008, Kennedy Homes conveyed to approximately fifteen non-party owners via warranty deed different portions of the Kennedy Property as individual lots.

¶ 9 In June 2008, Bank of Montreal initiated foreclosure proceedings against Kennedy Homes for the remainder of the Kennedy Property, and a receiver was appointed. The Village was not named as a defendant or otherwise a party to the foreclosure litigation. The record demonstrates that the Village was aware both of the foreclosure proceedings and of the fact that a receiver was appointed regarding the remainder of the Kennedy Property, as reflected in Village Board's meeting minutes from August 11, 2008. Beginning in November 2008, the receiver conveyed to three additional non-party owners portions of the Kennedy Property as individual lots. The receiver eventually placed the remaining Kennedy Property lots (subject property) up for auction.

¶ 10 On September 26, 2013, the foreclosure court entered an order approving the sale of the subject property to JLC. The order approving sale reflects that JLC paid $214,000 for the subject

property and that the purchase and sales contract "is approved in all respects and made free and clear of all liens and interests." On October 3, 2013, the receiver executed a receiver's deed conveying the subject property to JLC. In total, the receiver transferred 138 of the 174 platted lots that comprised phase I of the Trails of Hebron to JLC

¶ 11 On April 20, 2015, the Village filed a two-count complaint against JLC for breach of the Annexation Agreement. It alleged that JLC was the present owner of record of the subject property, and that JLC "is the successor Owner to the Trust and Kennedy Homes relative to the Subject Property." Count one alleged breach of the Agreement based on JLC's refusal to place a letter of credit or other security or bond with the Village to secure completion of the roads and other infrastructure within the Trails of Hebron. Count two sought declaratory judgment that, under the Agreement, JLC was liable for snowplowing the subdivision's roads. The Village stressed certain provisions in the Agreement it argued had bearing on JLC's liability to assume Kennedy Homes' obligations as the successor "Owner." It also alleged that JLC had paid the Village to snowplow the road within the Trails of Hebron during the 2014-2015 winter season.

¶ 12 On June 4, 2015, JLC answered the Village's complaint. It admitted that it was present owner of the subject property, that it had paid the Village to snowplow the roads for the 2014-2015 winter season, and that the Village had not yet accepted the roads. However, it denied that it was "the successor Owner to the Trust and Kennedy Homes relative to the Subject Property."

¶ 13 On July 15, 2015, the Village moved for partial summary judgment on both counts of its complaint. It argued that "JLC is a successor owner" and "owns the majority of lots within the Trails of Hebron," such that "the Agreement is binding on JLC as a successor owner." It requested, among other relief, that the circuit court find that JLC (1) is bound by the Agreement as Kennedy

Homes' successor, (2) breached the Agreement by failing to post security, and (3) was responsible for snowplowing and maintaining the roads.

¶ 14    On October 16, 2015, JLC filed a combined cross-motion for summary judgment and response to the Village's motion. It argued that it was not "the Owner" because the contractual conditions set forth in the Agreement that provide how to transfer the obligations of "the Owner," or Kennedy Homes, to a purchaser were not satisfied. It stressed that the Agreement and Amendment distinguish between (1) "the Owner," who is responsible for certain affirmative developer obligations, and (2) owners who purchase portions of the trust property subject to the Annexation Agreement and Amendment. JLC argued that it fell into the latter category, and that it was one of many purchasers in the Trails of Hebron, but not "the Owner" as contemplated in the Agreement or the Amendment. It additionally argued that the Village's was attempting to recover from JLC what it should have pursued against Kennedy Homes, because the final letter of credit provided by Kennedy Homes had expired five years before JLC acquired its interest in the subject property. The circuit court denied JLC's cross-motion for summary judgment on March 15, 2016.

¶ 15    JLC also filed a two-count counterclaim. Count one alleged that the Village breached the Annexation Agreement "by demanding and inducing [JLC] to pay for snowplowing services," rather than seek reimbursement from "the Owner," which was identified in the Agreement as the trustee and in the Amendment as Kennedy Homes. Count two sought, in the alternative, rescission of the contracts with the Village for snowplowing services. It sought judgment in the amount it paid the Village for snowplowing services when it "acquiesced to the Village's demands" to do so.

¶ 16    On November 13, 2015, the Village moved for judgment on the pleadings relative to JLC's counterclaim, and it attached to the motion the agreements that JLC entered into with the Village

for snowplowing. It argued that nothing in the Agreement required the Village to pay for snow removal or repay sums that JLC voluntarily paid the Village for that service. It also asserted that JLC waived its claim by entering into the written contracts for snow removal that postdated the Agreement, and that JCL's count one was barred by the voluntary payment doctrine. Concerning count two, the Village argued that JLC's argument was rooted in alleged misrepresentations made by the Village, but JLC's own pleadings demonstrated that it would be unable to prove the required elements for an equitable claim of recission.

¶ 17     On March 24, 2016, the circuit court granted the Village's motion for partial summary judgment. The court found that JLC "is bound by the Annexation Agreement as the Owner and as the sole successor to Kennedy Homes," and that JLC had "all the obligations to the Village under the Annexation Agreement which Kennedy [Homes] had when it was the Owner under the Annexation Agreement, with respect to the property acquired by [JLC] from Kennedy [Homes]." The circuit court noted that JLC purchased "everything that Kennedy [Homes] owned after Kennedy Homes had sold off some properties to individual homeowners." It also stated that JLC exercised control over the subdivision by paying for snowplowing services and requesting police protection for the subdivision. As to count one, the circuit court found that JLC breached the Agreement by failing to post security. Regarding count two, it found that JLC was obligated under the Agreement to snowplow and maintain the roads. The circuit court did not rule on damages because the parties did not brief or present evidence on damages. Instead, it ruled as to liability under the Agreement. It stated that "[t]he Village asked that I enter summary judgment specifically finding that the Agreement is binding on *** [JLC], and I am in agreement with the Village's position and will so find."

¶ 18    On June 15, 2016, in light of its finding that JLC was "the successor Owner," the circuit court granted the Village's motion for judgment on the pleadings concerning both counts of JLC's counterclaim.

¶ 19    On August 25, 2016, the circuit court granted JLC leave to amend its answer to allow it to plead the affirmative defenses of waiver, laches, satisfaction, and set off.  It also allowed JLC to amend its previous admission that the Village had not yet accepted the roads, "with the caveat that such amendment only be used as to the issue of damages and cannot be used as to against rulings already made by the Court."  Following this ruling, the parties litigated JLC's affirmative defenses.

¶ 20    On September 16, 2016, while the parties litigated JLC's affirmative defenses, the Village moved to compel specific performance of the Agreement concerning the letter of credit.  It relied on the circuit court's prior finding that JLC was "the Owner" and that JLC breached by failing to post security for the improvements.  The Village noted that Kennedy Homes had previously filed an irrevocable letter of credit in the amount of $2,017,774 (Kennedy LOC), that the Village in January 2008 approved a reduction in the Kennedy LOC to $967,542.63, but that the Kennedy LOC expired on March 16, 2008.  The Village argued that the expiration of the Kennedy LOC violated the Agreement, and that specific performance was an appropriate remedy.  On March 8, 2017, the circuit court granted the motion but declined to set the amount of the letter of credit or order JLC to file a letter of credit until it could determine the appropriate amount.

¶ 21    The following month, on October 12, 2016, the Village moved to compel JLC to snowplow the roads in the subdivision.  Like its prior motion to compel, the Village stressed the circuit court's March 24, 2016, finding that JLC was the successor "Owner," and was thus obligated under the Agreement to snowplow the roads until the Village's acceptance of the roads.  It also noted that JLC admitted in its answer that the Village had not yet accepted the road in its answer.  The circuit

court granted the motion on December 14, 2016, but the written order provided that "final judgment is deferred at this time."

¶ 22    On April 26, 2019, JLC filed a "motion for summary judgment as to *res judicata*." It argued that count one of the Village's complaint was precluded by a 2009 small claims action seeking attorney's fees filed by the Village against Kennedy Homes, which was filed during the pendency of the foreclosure proceedings. The motion also noted that on March 2, 2009, before it filed its small claims complaint, the Village sent Kennedy Homes a letter regarding its failure to replace the expired letter of credit and requested that a new letter of credit be issued. The Village filed its small claims complaint against Kennedy Homes on June 5, 2009, where it argued that it had "incurred attorneys [*sic*] fees in connection with Defendant Kennedy Homes' breaching such Agreement and Amendment by, among other things, failing to maintain the agreed upon security for improvements." JLC attached numerous exhibits, including the small claims complaint and an amended complaint, a letter the Village sent to Kennedy Homes offering to dismiss the complaint with prejudice upon payment of $1662.14, and a copy of the order granting the Village's motion to dismiss based on Kennedy Home's payment of the amount requested. JLC argued that, in the instant matter, the Village raised the same claim against it that the Village had already settled with Kennedy Homes and that the claim was barred by the doctrine of *res judicata*.

¶ 23    On January 10, 2020, after an evidentiary hearing, the circuit court agreed with JLC and found that the Village's count against JLC for failure to post a letter of credit was barred by *res judicata*. It found that the Village's dismissal of its small claims action against Kennedy Homes for breach of the annexation agreement "constituted a dismissal with prejudice of not only the claims explicitly alleged in the [c]omplaint, but all claims that then existed for breach of the subject Annexation Agreement."

¶ 24    On February 6, 2020, the circuit court made findings pursuant to Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying either enforcement or appeal or both concerning (1) the December 14, 2016, order entering judgment in favor of the Village on count two of its complaint regarding snowplowing the roads; and (2) the January 10, 2020, order finding that the Village's claim against JLC in count one of its complaint, pertaining to JLC's alleged breach for failure to post a letter of credit, was barred by *res judicata*.

¶ 25    The Village filed a notice of appeal on February 7, 2020, and it was docketed in this court as appeal no. 2-20-0124.  JLC thereafter filed a notice of appeal on February 14, 2020, and the appeal was docketed as appeal no. 2-20-0129.  On May 19, 2020, we granted the Village's motion to consolidate the appeals and ordered that the appeals be consolidated for briefing and decision.

¶ 26                                II. ANALYSIS

¶ 27    These consolidated appeals arise from the disposition of cross-motions for summary judgment on the issue of JLC's liability under the Agreement, as well as a subsequent motion for summary judgment filed by the Village asserting that the Village's count one, breach of the Annexation Agreement stemming from JLC's refusal to post a letter of credit, is barred by the doctrine of *res judicata*.  Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2018).  In evaluating whether a genuine issue of material facts is present, the pleadings, depositions, admissions, and affidavits must be construed strictly against the movant and liberally in favor of the opponent.  *Marshal v. City of Chicago*, 2012 IL 112341, ¶ 49.  A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if they are undisputed, reasonable persons could draw different inferences from them.

*Id.* If, however, the parties file cross-motions for summary judgment, they concede that no genuine issue of material fact is presented and agree that only questions of law are presented. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24. On appeal from the entry of summary judgment, our standard of review is *de novo*. *American Family Mutual Insurance Co. v. Chiczewski*, 298 Ill. App. 3d 1092, 1094 (1998). Likewise, the issue of whether a claim is barred by the doctrine of *res judicata* is a question of law subject to *de novo* review. *Law Offices of Nye & Associates, Ltd. v. Boado*, 2012 IL App (2d) 110804, ¶ 12.

¶ 28    The obligations imposed by the Annexation Agreement and Amendment are governed by basic rules of contract interpretation. See *Reserve at Woodstock, LLC v. City of Woodstrock*, 2011 IL App (2d) 100676, ¶ 39 (observing that annexation agreements are contracts and basic principles of contract interpretation apply). In construing a contract, our primary objective is to give effect to the intent of the parties. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2001). To this end, we construe the contract as a whole by viewing each provision in light of the other provisions. *Reserve at Woodstock*, 2011 IL App (2d) 100676, ¶ 39. The best indicator of the parties' intent is the language of the contract when given its plain and ordinary meaning. If the provisions of a contract are unambiguous, we ascertain the parties' intent from the language chosen in the contract. *First Bank and Trust Co. of Illinois v. Village of Orland Hills*, 338 Ill. App. 3d 35, 40 (2003). "When parties agree to and insert provisions into their agreement, we presume that this is done purposefully[,] and that the language employed is to be given effect." *Id*.

¶ 29    At the outset, we take this opportunity to emphasize that the Annexation Agreement and the Amendment refer to two different types of successor owners of property within the Trails of Hebron. The first type is referred to as "the Owner," who is tasked with certain affirmative responsibilities to develop the subdivision. For example, and relevant to the Village's underlying

complaint, "the Owner" is obligated to maintain the roads and post security to complete the public improvements. Though not at issue in this appeal, by way of example, "the Owner" is also obligated to perform numerous other tasks, such as constructing and installing a private walking path, sidewalk, and roadways, as well as installing other public improvements and utilities, such as storm and sanitary sewers. The Owner must also establish a homeowners' association and install lines for natural gas, electric, telephone, and cable television services. In the Annexation Agreement, the trustee is identified as the Owner. In the Amendment, Kennedy Homes is identified as the Owner, effectively replacing the trustee.

¶ 30 The other type of successor owner is referred to in the Annexation Agreement and the Amendment as "owner," with a lower case "o," or as "purchaser." A successor owner, unlike "the Owner," does not have affirmative obligations for the completion of the subdivision. Rather, a successor owner, or purchaser, is required to adhere to certain passive restrictions, such as abiding by zoning standards. Several discrete portions of the Annexation Agreement refer to both types of successors, which confirms that the contractual duties owed by "the Owner" are not the same as those owed by a purchaser. In short, the Annexation Agreement and the Amendment impose on "the Owner" affirmative obligations for the development of the trust property that are not likewise imposed on purchasers. Having recited the appropriate interpretive framework and distinguished between the "the Owner," who is responsible for developing the property, and "owner," who is burdened with passive restrictions on their property, we turn to the language of the Annexation Agreement.

¶ 31 Several sections in the Annexation Agreement pertain to its binding effect on the successors of the original parties. Section 18 states:

"BINDING EFFECT AND TERM

This Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors and assigns including, but not limited to, successor Owner of record, successor owners, lessees and successor lessees and upon any successor municipal authority of the Village and successor municipalities for a period of 15 years from the later of the date of execution hereof and the date of adoption of the ordinances pursuant hereto."

Section 20 provides:

"SUCCESSORS AND ASSIGNS

This Agreement shall inure to the benefit of, and be binding upon the Owner and its respective successors, grantees, purchasers, lessees, and assigns, and upon successor corporate authorities of the Village."

Section 23 states:

"COVENANTS RUNNING WITH THE LAND

All obligations of the Owner in this Agreement, including but not limited to monetary obligations in existence now as well as those which may come to exist in the future as a result of the Agreement, shall constitute covenants running with the land and such monetary obligations shall also be liens upon the land.  The Owner hereby consents to the filing of a lien on the Property for which the obligations are owned when any obligations are more than 90 days overdue."

Finally, section 28 provides:

"SALE OF PROPERTY

It is expressly understood and agreed that the Owner may sell or convey all or any part of the Property for the purposes of development, and upon each sale or conveyance, the purchaser shall be bound by and entitled to the benefits of this Agreement with respect to

the part of the Property sold or conveyed. When any such purchaser agrees to assume Owner's obligations hereunder, and when the Village is notified of such purchase and agreement, the Village hereby covenants and agrees that it shall consent to such assumption, and that it shall release Owner from its respective obligations hereunder with respect to that part of the Property so purchased. A selling Owner, however, may only be released where:

1. Provision has been made that all such public improvements and private improvements such as the walking path required by the Agreement or Village ordinances for the development of the parcel being sold will be installed and guaranteed in accordance with this Agreement and the ordinances of the Village; and

2. The Village has remaining in place some reasonable assurances of performance to assure the Village that any development responsibilities not yet satisfactorily completed by the Owner anywhere on the Property will be completed; and

3. The specific facts and terms of assignment are made known to the Village and the Village approves such assignment by corporate resolution; and

4. All monetary obligations of the Owner due to the Village as of the time of conveyance and attributable to the property conveyed have been satisfied in full; and

5. The purchasing Owner assumes all obligations of the selling Owner; and

6. The Owner complies with the Subdivision Ordinance and the Illinois Plat Act; and

7. There are no violations of Village ordinances or this Agreement."

The Village shall not unreasonably exercise its right to deny release herein and shall consider only those factors set forth in this paragraph. The provisions of this paragraph

shall not apply to or limit conveyances of any portions of the Property from Owner prior to submission of a final plat of subdivisions for any portion of the Property."

¶ 32    JLC argues on appeal that the circuit court erroneously found that it was obligated as the successor "Owner" under the Annexation Agreement and the Amendment. JLC's arguments largely recapitulate those it advanced in its combined cross-motion for summary judgment and response to the Village's request for partial summary judgment. JLC relies extensively on section 28, titled "SALE OF PROPERTY," and argues that it is not the successor "Owner" because it neither agreed to assume developer obligations nor were any of the conditions satisfied that were necessary to "transfer" those obligations from "the Owner," meaning Kennedy Homes, to any other party. JLC concedes that the Annexation Agreement and Amendment are binding on it, but it argues that it is an "owner," with a lower case "o," or purchaser, akin to the 18 or so individual purchasers who acquired a portion of the Kennedy Property before it, rather than the successor "Owner." It points out that, like those other purchasers before it, it acquired its portion of the Kennedy Property via a deed, with no assumption of the obligations of "the Owner," and that its deed contained language nearly identical to the other purchasers. It argues that taking title to a portion of the Kennedy Property does not, in itself, impose obligations of "the Owner" upon purchasers.

¶ 33    For its part, the Village only briefly responds to JLC's argument regarding section 28 and its impact on JLC's obligations under the Agreement. It asserts that JLC "hyper-focuses" on section 28 and fails to harmonize it with the provisions that state the Annexation Agreement is a covenant running with the land that is binding on successor owners or purchasers. The Village argues that JLC cannot avail itself of section 28 because this section describes only "how a selling

owner may be released from liability." It argues that JLC "is not a selling owner and Section [28] is simply not applicable."

¶ 34    We agree with JLC. Notwithstanding the fact that JLC purchased the bulk of the lots in the first platted phase of the subdivision, under the plain terms of the Annexation Agreement, the purchase, by itself, does not impose Owner obligations on the purchaser. Section 28 of the Annexation Agreement, titled "SALE OF PROPERTY," plainly governs how "the Owner," or developer, may be released from its obligations and transfer those obligations to another party. The Annexation Agreement provides no other mechanism to transfer developer obligations to a purchasing party, and section 28 was neither revoked nor amended in the Amendment. It therefore controls with respect to the subject property. Admittedly, the general tenor of section 28 describes how "the Owner" may free itself from its obligations to develop the property though the sale of all or any part of the trust property. Nevertheless, section 28 is dispositive of the central question posed in this appeal—whether JLC assumed the Owner's obligations under the Annexation Agreement and Amendment through the purchase of the subject property from the receiver. This is so because the plain language of section 28 conditions the purchaser's assumption of Owner obligations on the purchaser agreeing to assume those obligations, and further requires that the seven requirements enumerated in section 28 of the Annexation Agreement be satisfied.

¶ 35    For clarity, we break down section 28 into its component parts. Section 28 begins: "It is expressly understood and agreed that the Owner may sell or convey all or any part of the [Trust] Property for the purposes of development, and upon each sale or conveyance, the purchaser shall be bound by and entitled to the benefits of this Agreement with respect to the part of the [Trust] Property sold or conveyed." Relevant to the appeal, this language unambiguously provides that all purchasers are bound by the Agreement and are entitled to its benefits, regardless of whether

the purchaser acquires a portion of the trust property or all of it. By purchasing any amount of property within the Trails of Hebron, the purchaser is bound by the Agreement and the benefits of the Agreement transfer automatically to the purchaser, irrespective of the size of the portion of the trust property purchased. No mention is made in this sentence regarding the various developer obligations required of "the Owner."

¶ 36    The next segments of the SALE OF PROPERTY provision, though couched primarily in terms of releasing the current "Owner" from its developer obligations, detail the requirements for a purchaser to assume the obligations of "the Owner," and further requires that certain enumerated conditions be met in order to release the selling Owner from those obligations. It provides that, "[w]hen any such purchaser agrees to assume Owner obligations hereunder, and when the Village is notified of such purchase and agreement, the Village hereby covenants and agrees that it shall consent to such assumption, and that it shall release Owner from its respective obligations hereunder with respect to that part of the [Trust] Property so purchased." Here, the Agreement conditions the release of the Owner from its developer obligations on the purchaser agreeing to assume those obligations. The circuit court recognized that section 28 was dispositive and "at issue," but it erred in its reading thereof. In granting the Village's motion for partial summary judgment, the circuit court explained:

"[I]t's clear from my reading of Section 28 of the Annexation Agreement[,] which was at issue, that *** while [JLC] focuses on language 'when any such purchaser agrees to assume [the developer's] obligations,' that's being read to the exclusion of the prior sentence, which states that the Owner, it would have referred to Kennedy [Homes] at that time, may *** 'sell or convey any and/or all [*sic*] part of the property for [the] purposes of development,' and the purchaser 'shall be bound by and entitled to the benefits of this

Agreement with respect to [the part of] the property sold or conveyed.' The property sold or conveyed to [JLC] was all that remained."

The circuit court failed to recognize that the benefits of the Annexation Agreement received by purchasers are distinct from the obligations of the "Owner" to develop the property and transfer automatically to the purchaser. The court's interpretation also fails to acknowledge the remainder of section 28, which provides an exhaustive list of the conditions that must be met for an assumption of developer obligations to occur. It provides that the Owner "may only be released" where:

1. Provision has been made that all such public improvements and private improvements such as the walking path required by this Agreement or Village ordinances for development of the parcel being sold will be installed and guaranteed in accordance with this Agreement and the ordinances of the Village; and

2. The Village has remaining in place some reasonable assurances of performance to assure the Village that any development responsibilities not yet satisfactorily completed by the Owner anywhere on the [trust] property will be completed; and

3. The specific facts and terms of assignment are made known to the Village and the Village approves such assignment by corporate resolution; and

4. All monetary obligations of the Owner due to the Village as of the time of conveyance and attributable to the property conveyed have been satisfied in full, and

5. The purchasing Owner assumes all obligations of the selling Owner; and

6. The Owner complies with the Subdivision Ordinance and the Illinois Plat Act; and

7. There are no violations of Village ordinances or this Agreement."

Although described in terms of describing how the Owner may be released from its obligations to develop the trust property, the practical effect of this language is that a purchaser does not automatically assume "Owner" obligations simply by purchasing a portion of the trust property. Rather, in order for the "Owner" to be freed from its developer obligations and transfer those obligations through a sale to a purchaser, the purchaser must agree to assume those obligations and the seven "factors" enumerated in section 28 must also be satisfied. Based on a plain reading of the Annexation Agreement, the mere purchase of land within the Trails of Hebron do not make the purchaser "the Owner" who is tasked with developer obligations. To interpret the Annexation Agreement as providing that purchase, alone, of a portion of the trust property is sufficient to confer Owner obligations on the purchaser would render other, more specific provisions in the Agreement meaningless. See *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2001) (a court should "not interpret a contract in a manner that would nullify or render provisions meaningless"). Such provisions include the statement in section 28 referencing the purchaser's agreement to assume Owner obligations, as well as factor 5, above, which provides that a selling Owner may be released if "the purchasing Owner assumes all obligations of the selling Owner," among the other factors. A contrary interpretation would also mean that Owner obligations also passed to every non-party owner who purchased portions of the Kennedy Property from Kennedy Homes between September 2007 and February 2008, as well every non-party owner who purchased from the receiver during the foreclosure proceedings.

¶ 37     Here, the record does not support the conclusion that that JLC expressly agreed to assume the obligations of "the Owner" when it purchased the subject property. Likewise, there is no evidence that Kennedy Homes met any of the conditions necessary to be released as "the Owner." By comparison, the trustee was released as "the Owner" when Kennedy Homes entered into the

Amendment with the Village and agreed to assume all of "the Owner's" obligations. For example, Kennedy Homes, identified as "the Owner" in the Amendment, expressly agreed to complete the public and private improvements in the Kennedy Property, post security in the form of letters of credit or bonds, snowplow the roads, pay for school donations, and perform all other obligations of "the Owner." The Amendment also reflects that the Village and Kennedy Homes contemplated section 28 in executing the Amendment. The final paragraph in the Amendment, titled "Consent to Sale of Kennedy Property," states:

"The Village hereby consents to the sale of the Kennedy Property from [the trustee] to the Owner [expressly identified as Kennedy Homes]. The Owner agrees to assume all obligations of [the trustee] relative to the Kennedy Property and to comply with this First Agreement [*sic*], the Agreement, the Village's Subdivision Ordinance (Title 5B of the Hebron Municipal Code) and the Illinois Plat Act (765 ILCS 205/1 *et seq.*)"

As argued by JLC, the Amendment "checked every box" for Kennedy Homes to assume the obligations of "the Owner" in accordance with the terms of Section 28 of the Agreement. The Amendment stands as an example of satisfying the clear and unambiguous conditions outlined in section 28 to release "the Owner" and transfer those obligations to a third party. Conversely, here, no document identifies JLC as "the Owner," there is no evidence that JLC agreed to assume Owner obligations, and the Village does not directly make such an argument on appeal. Moreover, the Village offers no argument that Kennedy met any of the conditions in section 28 to transfer the obligations of "the Owner" to any other party. In the absence of any evidence or argument from the Village regarding whether Kennedy Homes satisfied the seven conditions necessary to be released from its Owner obligations, we need not analyze whether JLC acquiesced to assume the Owner's obligations by its actions of paying for snowplowing services for two winters and by

signing a document authorizing the Village's police department to enforce applicable laws in the subdivision. Both agreement to assume Owner's obligations and the fulfillment of the seven conditions are necessary to release the Owner and to allow the purchasing party "to assume Owner's obligations" are necessary to transfer that burden under the Annexation Agreement.

¶ 38 The Village spends the bulk of its brief arguing that JLC is a successor owner, with a lower case "o," of the Trust Property, which is subject to the Annexation Agreement, and that the Annexation Agreement is binding on JLC. The Village argues that JLC's lack of agreement "to abide by the obligations of the relevant annexation agreement" is irrelevant because "they do not have to agree." It highlights sections 18, 20, and 23 of the Annexation Agreement and argues that these provisions "contain no requirement that a successor owner must agree to assume the obligations in the Annexation Agreement." In the Village's view, these provisions negate JLC's position entirely.

¶ 39 The Village's arguments in this portion of its brief are largely unresponsive to JLC's points regarding section 28, which is the portion of the Annexation Agreement that we find dispositive. It overlooks JLC's acknowledgment that the Agreement and Amendment run with the land and is binding on all purchasers, or owners, with a lower case "o," including JLC. On appeal, JLC neither argues that it is not an "owner," with a lower case "o," nor does it dispute that the Agreement and Amendment are covenants that run with the land. Rather, JLC expressly recognizes that the contracts are binding on it, but it disputes that it is the successor "Owner" who is tasked with completing the streets and other public and private improvements within the trust property. In its brief, the Village repeatedly conflates "Owner" with "owner," or purchaser, and in doing so, fails to recognize that the "Owner" has obligations to develop the trust property that a purchaser does not. In short, the Village devotes much of its brief to an argument that JLC readily concedes,

while failing to refute or even acknowledge the primary argument that JLC does make.

¶ 40    The Village also seems to interpret JLC's argument as being dependent on JLC not being a developer, and it goes to great pains to stress that the Annexation Agreement does not use the term "developer," nor does section 11-15.1-1 of the Municipal Code condition the binding effect of an annexation agreement on a successor owner being a developer.  It construes JLC's argument as limiting "the obligations of constructing and maintaining the streets to purchasers who are developers."   JLC made no such argument on appeal.  We can only guess that the Village overlooked JLC's designation of "developer" in its opening brief to refer to "the Owner."   Early in its opening brief, JLC asserted that it "did not agree to undertake 'Owner' obligations (hereinafter referred to as 'Owner' or '*Developer*') of the [Annexation] Agreement or Amendment when it acquired" the subject property.  (Emphasis added.)  JLC explained in its reply brief that it changed "Owner to Developer [in its opening brief] for ease of understanding the argument due to the fact that the difference between Owner and owner is slight[,] especially if the term is at the beginning of a sentence."   There being no argument made by JLC that the annexation agreement is binding only on successors who are developers, the Village's assertion in this regard is likewise unresponsive to JLC's arguments on appeal.

¶ 41    Because JLC is not responsible for the developer obligations of the Owner, its refusal to post a letter of credit with the Village did not amount to a breach of the Annexation Agreement.  Likewise, JLC's denial of responsibility for snowplowing the roads actionable.  Therefore, the circuit court erred in denying JLC's cross-motion for summary judgment and in allowing the Village's motion for partial summary judgment.  Accordingly, we reverse.  In light of this court's reversal of the circuit court's order granting partial summary judgment in favor of the Village finding that JLC was "bound by the [A]nnexation [A]greement as the Owner," the issues raised in

the Village's cross-appeal are moot and will not be addressed.

¶ 42                               III. CONCLUSION

¶ 43    For the foregoing reasons, we reverse the judgment of the circuit court of McHenry County granting partial summary judgment in favor of the Village and against JLC, as well as the circuit court's order granting judgment on the pleadings as to JLC's counterclaim, and we remand the cause for further proceedings on JLC's counterclaim.  The Village's cross-appeal is moot, and we therefore dismiss it.

¶ 44    Appeal No. 2-20-0124 dismissed.

¶ 45    Appeal No. 2-20-0129 reversed and remanded.